FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

00 JUN 26

U.S. DISTRICT COURT
N.D. OF ALABAMA

TYRONE TOWNSEND,                    )
                                    )
    Plaintiff,                      )
                                    )
    vs.                             )        CV-99-BU-2212-S
                                    )
RADIO SHACK, INC., and TANDY        )        **ENTERED**
CORPORATION,                        )
                                    )        JUN 26 2000
    Defendants.                     )

## MEMORANDUM OPINION

This case is presently pending before this Court on Motion for Summary Judgment,

filed by Defendant Tandy Corporation. (Doc. 16) Plaintiff Tyrone Townsend sued

Defendants Radio Shack, Inc., and Tandy Corporation, alleging that Defendants

discriminated against him on the basis of his race and that it retaliated against him after

he filed an EEOC charge and complained of unlawful discrimination. Defendant Tandy

Corporation moved for summary judgment on all claims asserted by Plaintiff on the ground

that there are no disputed material facts and Defendant is entitled to judgment as a matter

of law.

Based on its review of the parties submissions, the Court has determined that

Defendant's Motion for Summary Judgment is due to be granted.

## I.    RADIO SHACK

In its answer, Tandy Corporation avers that Radio Shack is not a properly-named

35

defendant in this action as it is merely a division of Tandy Corporation and not a separate legal entity. Plaintiff has not argued to the contrary and never moved for a default judgment, despite the fact that Radio Shack never filed a separate answer. Indeed, the Court notes that there is no dispute in the record evidence that Radio Shack is merely a division of Tandy Corporation and Plaintiff admits this fact in its statement of fact in opposition to Tandy Corporation's Motion for Summary Judgment. Therefore, there being no dispute that Radio Shack is a separate legal entity, Radio Shack is due to be dismissed as a party defendant to this action.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment provides the parties an opportunity to test the mettle of their case before trial. On a motion for summary judgment, this Court must assess the entire record in order to ascertain whether there is a genuine need for a trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)(quoting Advisory Committee Note to 1963 Amendment to Fed. R. Civ. P. 56(e)). Summary judgment is appropriate only if the Court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for its motion and specifically identifying evidence in the record that

it believes demonstrates the absence of a genuine issue of material fact.  *Celotex*, 477

U.S. at 323, 106 S. Ct. at 2553; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.

1991).  The moving party's burden is not meager; it must illuminate for the Court the

reasons why the non-moving party cannot or does not raise a genuine issue of material

fact sufficient to support a trial.  *Clark*, 929 F.2d at 608.  The moving party's burden was

set forth in *Clark* as follows:

> The moving party bears the initial burden to show the district court, by
> reference to materials on file, that there are no genuine issues of material
> fact that should be decided at trial.  Only when that burden has been met
> does the burden shift to the non-moving party to demonstrate that there is
> indeed a material issue of fact that precludes summary judgment.  *Celotex*
> did not change the general rule.  *Celotex* simply holds that under certain
> circumstances the movant may meet its Rule 56 burden without negating an
> element of the non-moving party's claim and that under such circumstances
> it is sufficient to point to materials on file that demonstrate that the party
> bearing the burden of proof at trial will not be able to meet that burden.  Even
> after *Celotex* it is never enough to simply state that the non-moving party
> cannot meet its burden at trial.

*Id.* (citing *Celotex*, 477 U.S. at 323-25, 106 S. Ct. 2553-54).[1]  In other words, the moving

party must demonstrate that its motion is due to be granted before the burden shifts to the

non-moving party to demonstrate an issue for trial.

Once the moving party has satisfied this initial burden, however, the nonmoving

party "must make a sufficient showing to establish the existence of each essential element

---

[1]The Eleventh Circuit recognized that *Celotex* created "an exception to the
*Adickes* [*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142
(1970)] rule for [an] *uncommon* situation," i.e., "when neither party could prove either
the affirmative or the negative of an essential element of the claim."  *Clark*, 929 F.2d at
607, 608 (emphasis added).  In this "uncommon situation," the *Celotex* exception allows
a moving party to carry its burden by showing or "pointing out," by reference to record,
that the non-moving party cannot prove its claim.  *Id.* at 607.

to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir. 1994). "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(e)); *see Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). However, "Rule 56 . . . does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Id.*; *see also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), *cert. denied sub nom. Jones v. Resolution Trust Corp.*, 516 U.S. 817, 116 S. Ct. 74, 133 L. Ed. 2d 33 (1995).

In resolving whether a given factual dispute requires submission to a jury, the Court must inspect the presented evidence through the looking glass of each party's substantive evidentiary burden. *Anderson*, 477 U.S. at 254-55, 106 S. Ct. at 513. The Court, however, must not weigh conflicting evidence for probity or make credibility determinations. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather determine whether such issues exist to be tried. The court must avoid weighing conflicting evidence or making credibility determinations." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993)(citations omitted). "If the record presents factual issues,

the court must not decide them; it must deny the motion and proceed to trial." *EPL, Inc.*

*v. USA Federal Credit Union*, 173 F.3d 1356, 1360 (11th Cir. 1999)(quoting *Clemons v.*

*Dougherty County, Ga.*, 684 F.2d 1365, 1369 (11th Cir. 1982). At the same time, "[t]he

nonmoving party must provide more than a mere scintilla of evidence to survive a motion

for judgment as a matter of law; 'there must be a substantial conflict in evidence to support

a jury question.'" *Tidwell v. Carter Products*, 135 F.3d 1422, 1425 (11th Cir. 1998) (quoting

*Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989)).

## II. STATEMENT OF FACTS

Defendant Tandy Corporation hired Plaintiff Tyrone Townsend in October 1994 as

a manager trainee. Plaintiff began his employment at the Radio Shack store in Brookwood

Mall. Less than a year later, Defendant promoted Plaintiff to the position of store manager

at the Bessemer Radio Shack store.

Plaintiff admits that he had "store image" problems while he was manager of the

Bessemer store. Bernard Hampton, Plaintiff's district manager and immediate supervisor,

discussed these problems with Plaintiff. Hampton transferred Plaintiff after a year to the

Five Points West store, a lower volume store. Hampton testified that this was a demotion;

however, Plaintiff contends that he was never told he was being demoted and he

considered it a lateral transfer.

In April 1997, Tim Gaylard replaced Hampton as Plaintiff's district manager.

Hampton told Gaylard that Plaintiff had some performance problems; Plaintiff contends that

Hampton did not tell him that he had such problems after he moved to the Five Points West

store.

Less than three weeks after Gaylard became Plaintiff's district manager, the Five Points West store changed its location. This move took place under short notice. Ten to twelve Radio Shack managers and manager-trainees helped with the move. The parties disagree as to the condition of the store following the move; for purposes of summary judgment, the Court assumes that the majority of the store areas were in an unsatisfactory condition following the move.

In October 1997, approximately six months after the move, Gaylard determined that Plaintiff had failed to complete the organization of the new Five Points West store location. Particularly, Plaintiff testified that Gaylard told him the problem was "pricing," which means that he had not placed all of the current sales tags on the store's merchandise. There is no apparent dispute between the parties that Defendant had told Plaintiff that "pricing" was a "zero-tolerance" issue or that Plaintiff had failed to have all the correct price tags on the merchandise in October 1997. Gaylard told Plaintiff that he was being transferred from the Five Points West store because of pricing. At this time, Gaylard gave Plaintiff the choice of transferring to the Flint Ridge store or the Western Hills Mall store. Gaylard suggested, and Plaintiff agreed, that the Western Hills Mall store was a better choice than the Flint Ridge store because it was a mall store and a higher volume store. Plaintiff opted to be transferred to the Western Hills Mall store. He testified that he considered the move to be a lateral transfer and an opportunity -- not a demotion. However, he was upset and distraught about the transfer, which he felt was unjustified.

Defendant transferred James Kennedy, a white store manager from the Radio

Shack in Hueytown, to replace Plaintiff at the Five Points West store.  At that time, Kennedy had ranked higher than Plaintiff in the district performance rankings consistently from April 1997 until October 1997.  About six months before Gaylard transferred Kennedy, another Radio Shack employee, Nikesha Dial, told Gaylard, before he decided to transfer Kennedy, that Kennedy had taken money from petty cash and merchandise from the store.

In November 1997, Defendant promoted Kennedy to store manager of the Galleria Mall store.  At that time he was ranked 12th and Plaintiff was ranked 24th out of a total of 29 store managers in the district performance rankings.  Two months later, Kennedy was terminated for stealing money and merchandise from the Galleria Mall store.

In January 1998, while Plaintiff was store manager, the Western Hills Mall store was moved out of Gaylard's district and into the district supervised by Doug Green.  Plaintiff contends that he complained to Green about understaffing and that he told Green he was having trouble opening his store on time because of a lack of staff.  Green never provided Plaintiff with additional staff.

Thereafter, Green requested the open and close report for Plaintiff's store.  The open and close report is a computer record of the time of day each store is opened and closed.  The open and close report showed that Plaintiff's store had opened late eleven times from January 18, 1998 through March 1, 1998.  Of those eleven times, Plaintiff personally opened the store late seven times; the store was opened late by sales associates for which Plaintiff was responsible the remaining four times.  Green testified that he demoted Plaintiff because of the series of late store openings.

Green noted on a copy of the open and close report sent to his immediate

supervisor, "I recommend demotion to salesmaker to be fair and consistent.  I previously demoted J. Rousseau ([store number] 9340) for the same thing back in December."  According to the Personnel Change Record, Green had demoted Jeremy Rousseau, a white store manager, to sales associate for late store openings.  Rousseau, who was a manager for only a short time, testified that he was demoted for late store openings and inventory problems.  Also, Rousseau testified that he was given the choice of a demotion to sales associate or a transfer, as a store manager, to a lower volume store, and that he chose to take the demotion.  Plaintiff was not given the option of transferring to another store as a store manager.

Another white store manager, Jim Lierer opened his store late on three occasions during fourteen months. Of those three occasions, Lierer was personally responsible for one  late store opening.  Plaintiff also contends that another white store manager, Jeremy Hyche, told him that he had opened his store late a "number" of times and had not been disciplined.  There is no evidence as to the specific number of times Hyche opened the store late within a relevant period of time and there is no evidence indicating that Green knew of the late store openings.

Plaintiff was demoted to a Tier 3 sales associate and assigned to the Century Plaza store under the supervision of Lierer, the store manager.  Plaintiff told Lierer that he believed that Green had treated him unfairly on the basis of his race; Lierer told Green that Plaintiff believed Green was discriminating against him.  Also, after his demotion, Plaintiff filed a charge of discrimination with the EEOC.  He alleged race discrimination with regard to the demotion, inadequate staffing, and the denial of a recruiting bonus.

Marva Borders, Director of Employee Relations for Defendant, investigated Plaintiff's EEOC charge. She interviewed Gaylard and Green; she did not interview Plaintiff, Lierer or Rousseau.

After his demotion, Plaintiff was not given responsibility for opening and/or closing the Century Plaza store. Green had told Lierer not to give Plaintiff responsibility for opening and/or closing the store, based on Plaintiff's inability to open his store on time. Green also testified that he would not have promoted Plaintiff to another store manager position because he had demonstrated that he "couldn't even open the doors on time." The district managers make the selection decisions regarding store manager positions. Plaintiff never directly told Green or Gaylard that he wished to be promoted to store manager position after his demotion; he did, however, tell Lierer that he wanted to return to management. John White, a white store manager, was demoted to a smaller volume store for performance problems; after improving his performance, he was promoted to a larger volume store.

Lierer testified that, in July or August of 1998, he asked Plaintiff if he wanted to go back to management training as his manager trainee, a position filled by the store manager and not the district manager. Plaintiff told Lierer he felt that he should not have to go through training again and Plaintiff declined his offer.

According to the evidence, Plaintiff was a productive and accommodating sales associate. However, in October 1998, he was demoted from a Tier 3 sales associate to a Tier 2 sales associate. The personnel change form was approved by David Johnson, and it states across the top, "Computer generated PCR for multiple changes." Three

months later, Plaintiff was promoted back to a Tier 3 sales associate position.

On May 25, 1999, the EEOC, without making a determination, issued Plaintiff a right-to-sue letter. Shortly thereafter, Plaintiff accepted another job. He then resigned from Defendant, effective July 1999. Plaintiff contends that his salary was substantially reduced when he was demoted and that he was unable to support his family on that salary. He also contends that he was humiliated by his demotion and his failure to be promoted back to a store manager position.

Plaintiff filed a Complaint in this Court on August 24, 1999, alleging race discrimination and retaliation, in violation of § 1981 and Title VII.

## III.   DISCUSSION

The Court has reviewed the submissions of the parties, viewing the evidence in the light most favorable to the non-moving party, Plaintiff, and finds that there are no disputed issues of material fact and that Defendant is entitled to judgment as a matter of law.

### A. RACE DISCRIMINATION CLAIMS

#### 1. Involuntary Transfer – Five Points West to Western Hills Mall

Defendant contends that Plaintiff cannot establish a prima facie case of race discrimination based on his transfer from the Five Points West store to the Western Hills Mall store because the transfer was not an adverse employment action.

Whether a change in job duties and assignments constitutes an actionable adverse employment action turns on whether a reasonable person would have found the change to be adverse to their employment. The Eleventh Circuit has held that a plaintiff must show

that "a reasonable person in [Plaintiff's] position would have found his transfer to be adverse under all the facts and circumstances. *Doe v. DeKalb County School District*, 145 F.3d 1441, 1453 (11th Cir. 1998). Among the facts and circumstances affecting whether a change in a plaintiff's job is considered "adverse" are changes that result in "lesser pay, responsibilities or prestige," and changes that "involve arduous travel or that impede an employee's professional growth or advancement." *Id*. at 1452. Based on the "reasonable person" standard, "a *purely* lateral transfer is not an adverse employment action." *Id* at 1450 (citing, *inter alia*, *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997); *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 886 (6th Cir. 1996)).

Plaintiff contends that the transfer was an adverse employment action because "the plaintiff's transfer was designed to increase the opportunities for a white male manager and decrease opportunities for the plaintiff" – "the plaintiff was transferred from [the Five Points West store] to [the Western Hills Mall store] in order for Gaylard to promote James Kennedy from the Hueytown store to the Galleria store." However, he concedes that the transfer was "absolutely not" a demotion; it was a transfer against his will. "[T]he voluntary or involuntary nature of the transfer is not relevant to the question of whether it was unlawfully adverse." *Doe*, 145 F.3d at 1454.

Plaintiff testified that the Western Hills Mall store is a larger volume store than the Five Points West store and it was located in a mall, which Plaintiff testified was a "bigger positive" on his resume than managing a "strip" store, such as the Five Points West store. Even if this Court assumes that Defendant's motive was to favor a white employee, Plaintiff has not presented substantial evidence that a reasonable person would have found the

transfer to be adverse.

Therefore, Defendant's Motion for Summary Judgment is due to be granted and Plaintiff's claim of race discrimination with regard to his transfer is due to be dismissed.

### 2. Demotion

Defendant contends that Plaintiff cannot establish a prima facie case in support of his claim of race discrimination based on his demotion from store manager to sales associate. The evidence is undisputed that Plaintiff's demotion to sales associate was a disciplinary action.

In *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984), the Eleventh Circuit Court of Appeals held that a plaintiff can establish a prima facie case of discriminatory discipline by showing that (1) he is a member of a protected class; (2) that he was disciplined; and (3) one of the following:

    a.    he was "replaced by one outside the protected class;" or,

    b.    the discipline imposed on him was more harsh than that imposed on similarly situated employees outside the protected class for nearly identical conduct.

*Id*. at 1185.

The parties agree that Plaintiff's replacement as store manager at the Western Hills Mall store was African-American. That leaves Plaintiff the burden of demonstrating a prima facie case of discriminatory discipline by proving he was disciplined more harshly than similarly situated employees outside the protected class for nearly identical conduct. Plaintiff argues that he was treated more harshly than white store managers for his failure

to open his store in a timely manner.

> [I]n cases involving alleged [discriminatory] bias in the application of discipline for violation of work rules, the plaintiff, in addition to being a member of a protected class, must show either (a) that he did not violate the work rule, or (b) that he engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against him were more severe than those enforced against the other persons who engaged in similar misconduct.

*Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989). "In a disparate discipline case, 'the most important variables, . . . and the most likely sources of different but nondiscriminatory treatment, are [1] the nature of the offenses committed, and [2] the nature of the punishment imposed.'" *Latham v. Department of Children and Youth Services*, 1996 U.S. Dist. LEXIS 19007, *19 (N.D. Ga. Nov. 11, 1996)(quoting *Jones*, 874 F.2d at 1539-40 (quoting *Moore v. City of Charlotte*, 754 F.2d 1100, 1105 (4th Cir.), cert. denied, 472 U.S. 1021 (1985))). Plaintiff has the burden "'to show a similarity between [his] conduct and that of white employees who were treated differently and not on [the defendant] to disprove their similarity.'" *Gerwens*, 874 F.2d at 1541 (quoting *Tate v. Weyerhauser*, 723 F.2d 598, 603 (8th Cir.1983), *cert. denied*, 469 U.S. 847, 105 S. Ct. 160, 83 L. Ed. 2d 97 (1984)).

Plaintiff compares his discipline with that of three white store managers. For the reasons set forth below, the Court finds that Plaintiff cannot establish that he was treated more harshly than his three asserted comparators.

### a.    Jeremy Rousseau

Viewing the facts in the light most favorable to Plaintiff, Rousseau was demoted from a store manager position to a sales associate position for late store openings and

Page 13 of  25

inventory problems after he was given the chance to manage a smaller store. Plaintiff contends that he was treated more harshly than Rousseau because Rousseau had more problems and because he was given the option of transferring to another store as a store manager. Plaintiff was not given the option of transferring to a smaller store. This failure to offer him a transfer to a smaller store is Plaintiff's asserted harsher treatment.

Nevertheless, the Court finds that Plaintiff has not demonstrated that he is similarly situated to Rousseau. When problems arose with Rousseau's management of his first store -- his first strike -- he was given the option of transferring to another store for a second chance at management. Plaintiff was given the same option when problems arose at his Five Points West store -- arguably his first strike.[2] He chose to transfer to Western Hills Mall store. However, Plaintiff was demoted at strike two, his second unacceptable management of a store. The Court finds that Plaintiff has not demonstrated that he was treated more harshly than Rousseau simply because he was not given an option to transfer.

### b.    Jim Lierer

Lierer testified in his deposition that he had opened his store late on three occasions during fourteen months. Plaintiff's store was opened late on eleven occasions during two months. The work rule violations are not comparable. *Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999). Therefore, Plaintiff has not demonstrated that he was treated

---

[2]The Court notes that Plaintiff was transferred from the Bessemer store to the Five Points West store, a smaller volume store, because of store image problems. Arguably, this transfer was Plaintiff's first strike and the transfer to the Western Hills Mall store because of pricing problems was his second strike.

more harshly than Lierer.

### c.    Jeremy Hyche

Plaintiff bases his argument that Hyche is a proper comparator on his deposition testimony; to wit: "Jeremy Hyche also confided in me himself that he had a number of late store openings, and received no disciplinary action." This evidence is insufficient to establish that Hyche was treated more favorably than Plaintiff. *Gerwens*, 874 F.2d at 1542 (To satisfy his prima facie showing, Plaintiff must demonstrate that the decision-maker "knew of [the work rule violations] and did not act to discipline rule violators." (footnote omitted)). Therefore, Plaintiff has not demonstrated that he was treated more harshly than Hyche.

Based on the foregoing the Court finds that Plaintiff has failed to demonstrate a disputed issue of material fact sufficient to establish a prima facie case of discrimination with regard to his demotion claim. Therefore, Defendant's motion for Summary Judgment is due to be granted as to Plaintiff's demotion claim.

### 3. PROMOTIONS

#### a.    Galleria Store Manager

Plaintiff contends that he was not selected for promotion to store manager of the Galleria store because of his race. Defendant contends that it promoted Kennedy because he was more qualified than Plaintiff as demonstrated by his consistently higher district performance ranking. Plaintiff contends that this reason is pretext because the decisionmaker was informed of Kennedy's deficiencies and promoted him after only one

month at the Five Points West store, the store from which Plaintiff was transferred, allegedly, to make room for Kennedy.  Plaintiff also contends that his performance at the Five Points West store prior to his transfer to Western Hills Mall had raised the sales performance of the store to a level high enough to justify opening a new store location. The Court need not remind Plaintiff that despite his prior performance, he was transferred from the Five Points West store for management problems.

Nevertheless, assuming that Plaintiff's performance at the Five Points West store was exemplary, his evidence is insufficient to show that the articulated reason for selecting Kennedy to manage the Galleria store was a pretext for race discrimination.   Defendant states that it selected Kennedy over Plaintiff because Kennedy had a higher store ranking than Plaintiff, when compared to other store managers in the district.  Plaintiff testified that these store comparisons within the district "have always been represented to me to be the most important rankings that have to do with your performance at Tandy Corporation, Radio Shack."  Plaintiff's Depo. (I) pp. 132-33.

The Eleventh Circuit has held, "[A] plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where, as here, the reason is one that might motivate a reasonable employer." Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997).  Given the fact that Plaintiff admitted that the rankings are "the most important" gauge of store manager performance, it is likely that such ranking would motivate an employer decision. Moreover, Plaintiff's allegation that Defendant was told by an employee that Kennedy had been taking money and merchandise from his previous store may show that Defendant's decision was

Page 16 of  25

unwise, but it does no more than question the wisdom of Defendant's decision.

Therefore, the Court finds that Plaintiff has failed to present sufficient evidence to present an issue of material fact as to whether Defendant failed to promote him to the position of store manager at the Galleria based on his race.

### b.     Promotion to Store Manager After Demotion

Plaintiff contends that after he was demoted to a sales associate position the district manager (Green) "continually refused to consider the plaintiff as he had considered other white managers for promotion and refused to promote him back into management even though the plaintiff was excelling as a sales associate."  Defendant presented evidence that Green "would not promote someone back to management who could not perform the most basic function of opening the store on time."  Defendant's reply, 21 citing green Depo., p. 68.

Plaintiff has presented no evidence of a white employee that was to a store manager position after being demoted to a sales associate position.  Comparisons to the promotion of white store manager trainees or established white store managers is not sufficient to establish that the articulated reason for not considering Plaintiff for promotion -- his failure to open his store on time and his subsequent demotion -- is a pretext for race discrimination.

### 4. HOSTILE WORK ENVIRONMENT

Plaintiff contends that defendant created a hostile work environment on the basis of his race based on the following acts:

1.     Plaintiff did not receive awards to which he was entitled;

2.     He was demoted from store manager to sales associate;

3.     He was demoted from Tier 3 sales associate to a Tier 2 sales

associate; and

4.     He was "consistently consulted" by other store employees about how

to perform certain tasks, yet not given the opportunity to return to

management.

Such evidence is insufficient to support a claim for hostile work environment based on

race.

Title VII makes it illegal for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin."   42 U.S.C. § 2000e-2(a)(1).   This statute prohibits an employer from maintaining a hostile work environment based on the same protected classes. *Harris v. Forklift Sys.*, Inc., 510 U.S. 17, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993); *Bivins v. Jeffers Vet Supply*, 873 F. Supp. 1500, 1507 (M.D. Ala.1994), *aff'd*, 58 F.3d 640 (11th Cir.1995).   A hostile work environment is created "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"   *Harris*, 510 U.S. at 21, 114 S. Ct. 367. When examining whether alleged conduct created a hostile environment, the court must look to the totality of the circumstances.   *Henson v. City of Dundee*, 682 F.2d 897 (11th Cir.1982).

To establish a prima facie case of hostile working environment, a plaintiff must establish that (1) he is a member of a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affects a term, condition, or privilege of employment; and (5) respondeat superior. *Bivins*, 873 F. Supp. at 1507; *Henson*, 682 F.2d at 903-05.

. . .

> . . . [I]n order to be actionable as racial harassment under Title VII, [Plaintiff] must also show that the harassment was sufficiently severe and pervasive so as to alter the conditions of employment and create an abusive working environment. *Harris v. Forklift Sys.*, 510 U.S. 17, 21-22, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993). In determining whether the nature of the harassment is severe and pervasive, courts must examine the totality of the circumstances. *Id*. at 23, 114 S. Ct. 367. This inquiry includes, but is not limited to, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*.
>
> This fourth element contains both subjective and objective components. To be actionable, the conduct must be "severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive," and that the victim must "subjectively perceive the environment to be abusive." *Id*. . . . The complained of conduct must be persistent and routine rather than isolated or sporadic in nature in order to be sufficiently severe and pervasive to alter the conditions of employment. *Carter v. Barnett Bank of Manatee County*, 1997 WL 724414 (M.D. Fla.1997) (citing *Baskerville v. Culligan Intern'l Co.*, 50 F.3d 428 (7th Cir.1995)).

*Merriweather v. Alabama Dept. of Public Safety*, 17 F. Supp. 2d 1260, 1271-72 (M.D. Ala. 1998), *aff'd* 199 F.3d 443 (11th Cir. 1999).

The specific acts of disparate treatment, without overt or obvious racial invective, do not demonstrate that his workplace was permeated with discriminatory intimidation, ridicule, and insult, so severe or pervasive that it altered the conditions of his employment and created an abusive working environment. *Id*. at 1271-73.

Therefore, Defendant's Motion for Summary Judgment as to Plaintiff's hostile environment claim based on race harassment is due to be granted.

## B.   RETALIATION

In order to establish a prima facie case of retaliation in violation of Title VII, Plaintiff must establish: (1) a statutorily protected expression; (2) an adverse employment action; and (3) a causal link between the protected expression and the adverse action. *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993).

Plaintiff claims the following adverse employment actions were taken against him in retaliation for filing an EEOC charge and/or complaining about race discrimination:

1.   Failure to promote him back to a store manager position;

2.   Failure to allow him to open and close the store after his demotion;

3.   Demotion from Tier 3 sales associate to a Tier 2 sales associate;

4.   Attempts to refute the EEOC charge through a sham investigation.

### 1.   Adverse Employment Action – Sham Investigation

Plaintiff contends that Defendant retaliated against him by "attempt[ing] to refute the EEOC Charge through a sham investigation." Plaintiff's Brief, p. 45. Specifically, Plaintiff contends that the investigation was inadequate and that Defendant "sought to cover up the truth and forego a proper investigation instead of properly addressing the plaintiff's complaints." *Id*. at 46-47. Plaintiff does not allege any specific effect upon the terms and conditions of his employment as a result of the "sham" investigation; therefore, the Court finds that the "sham" investigation is not an adverse employment action upon which a claim of retaliation can be based.

The Eleventh Circuit Court of Appeals recently held:

> The anti-retaliation provision of the various job discrimination statutes are aimed at preventing the employer from punishing the employee by making job conditions worse. The failure to settle a claim for whatever reason does not make job conditions worse as a result of the claim having been made. They are already "worse" (if the underlying claim is valid). The failure to settle is not something that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Robinson* [ *v. City of Pittsburgh*], 120 F.3d [1286,] 1300 [(3d Cir. 1997)](internal marks omitted). The settlement of a claim, in short, is not condition of employment.

*Gupta v. Florida Board of Regents*, _____ F.3d _____, ____ (11th Cir. 2000)[2000 WL 633024].

Plaintiff does not allege that the failure to properly investigate his EEOC charge affected a term or condition of his employment; that is, he does not allege that his job conditions were made worse by the inadequate investigation. Therefore, Defendant's Motion for Summary Judgment as to Plaintiff's retaliation claim based on the alleged inadequate investigation of his EEOC charge is due to be granted.

### 2. Pretext

Defendant argues that Plaintiff cannot establish that Defendant's articulated, legitimate nondiscriminatory reasons for the alleged adverse employment actions are pretext.

### a. Promotion and Responsibility for Opening and Closing the Store

Plaintiff contends that he was not promoted to store manager position after his demotion and that he was not given responsibility for opening and closing the store while a sales associate in retaliation for filing an EEOC charge and for other acts opposing

unlawful discrimination. Defendant contends that Plaintiff cannot establish that its reason for not promoting him back to a store manager position and for not giving him responsibility for opening and closing the store is a pretextual. The Court agrees.

Defendant contends that it would not promote Plaintiff to a store manager position because he "could not perform the most basic function of opening the store on time. It offered the same reason for not giving Plaintiff responsibility, as a sales associate, for opening and closing the store. Plaintiff has failed to present sufficient evidence to demonstrate that Defendant's articulated reason is pretext. To show pretext, Plaintiff offers evidence of a white store manager who was "demoted" from a large volume store to a small volume store and evidence of a white store manager demoted from a store manager to a manager trainee. However, Plaintiff offers no evidence to show that Defendant's reason -- it would never promote Plaintiff or give him responsibility for opening/closing the store because he had demonstrated that he could not open his store on time -- is a pretext.

Plaintiff also contends that Defendant "was providing a second chance for the Caucasian employees [that it] did not provide to the plaintiff." The Court finds that the evidence is quite clear that Plaintiff had his second chance when he was transferred to the Western Hills Mall store. His contention that he was not offered a "second chance" like white employees is simply without evidentiary support.

The Court finds that Defendant's Motion for Summary Judgment as to Plaintiff's retaliation claims based on failure to promote him and the failure to give him additional responsibilities as a sales associate is due to be granted.

Page 22 of 25

### b.   Demotion from Tier 3 sales associate to a Tier 2 sales associate

Plaintiff contends that he was demoted by Green from Tier 3 sales associate to Tier 2 sales associate in retaliation for filing a complaint of race discrimination. Defendant asserts that this demotion was automatic, based on his sales per hour. The Court notes that Plaintiff does not allege this demotion in his complaint, that he did not testify during his deposition that this demotion was one of the ways in which Green retaliated against Plaintiff, and that he did not question Green regarding the demotion from Tier 3 during Green's deposition. Plaintiff apparently did not complain at all about this demotion until his brief in opposition to Defendant's Motion for Summary Judgment, in which he contends -- supported by his affidavit -- that Green demoted him from a Tier 3 sales associate to a Tier 2 sales associate in October 1998. This claim is not before the Court and Plaintiff may not add it through arguments in his brief in opposition to Defendant's motion for summary judgment. *Speer v. Rand McNally & Co.*, 123 F.3d 658, 665 (7th Cir. 1997); *see also King v. Virginia Employment Commission*, 33 F.3d 51 [unpublished], 1994 WL 416439, *3-*4 (4th Cir. Aug. 10, 1994).

### C.   CONSTRUCTIVE DISCHARGE

Plaintiff contends that Defendant constructively discharged him on the basis of his race and in retaliation for complaining about race discrimination. He claims he was compelled to resign after his demotion from store manager to sales associate when he was not given the opportunity to return to management and Defendant did not resolve his

EEOC claims.  He states, "Thus, the plaintiff had to seek other options in order to regain

the equivalent of his former salary and job position."

> To prove constructive discharge, an employee must demonstrate that her working conditions were so intolerable that a reasonable person in her position would be compelled to resign. *Huddleston v. Roger Dean Chevrolet, Inc.*, 845 F.2d 900, 905 (11th Cir.1988); *Wardwell v. School Board*, 786 F.2d 1554, 1557 (11th Cir.1986); *Bourque v. Powell Electrical Manufacturing Co.*, 617 F.2d 61, 65 (5th Cir.1980); *Young v. Southwestern Savings & Loan Ass'n*, 509 F.2d 140, 144 (5th Cir.1975).  Also, Defendant's actions leading to the decision to quit must have been deliberate, that is, they "must have been taken with the intention of forcing the employee to quit." *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir.1981).

*Cross v. Southwest Recreational Industries, Inc.*, 17 F. Supp. 2d 1362, 1376 (N. D. Ga.

1998).

The Court notes that Plaintiff worked as a sales associate from March 1998 until he

resigned in July 1999.  The recent changes in Plaintiff's position just prior to the letter of

resignation are the issuance of a right to sue letter from the EEOC, without a

determination, and Plaintiff's accepting a position with Miles College.  Plaintiff's letter of

resignation specifically references the new position, stating that Plaintiff has "accepted a

career opportunity elsewhere and will no longer be available to work for this company."  A

reasonable person could not find that the working conditions were so intolerable that a

reasonable person would be compelled to resign based on the undisputed facts that

Plaintiff remained in the sales associate position for over a year and did not resign until he

had obtained new employment.

Defendant's motion for summary judgment based on Plaintiff's constructive

discharge claim is due to be granted.

## IV.    CONCLUSION

For the reasons set forth above, the Court finds that Defendant's Motion for Summary Judgment (Doc. 16), as to all of Plaintiff's claims, is due to be granted.  The Court finds no existing disputed issue of material fact and that Defendant is entitled to judgment as a matter of law.

The Court will enter an Order contemporaneously herewith in accordance with this Memorandum Opinion granting summary judgment in favor of Defendant on all claims of Plaintiff.

DONE this **23** day of June, 2000.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE